## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **AMERICAN SOUTHERN INSURANCE COMPANY,** | § § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § § | **CIVIL ACTION NO._____** |
| **ASSURANCE RESOURCES , INC., COMPANION LIFE INSURANCE COMPANY, RGA REINSURANCE COMPANY, RUSSELL T. COATS, SR., PATRICK L. LALOR AND PATRICK L. LALOR, ATTORNEY AT LAW LLC** | § § § § § § § § § | |
| **Defendants.** | § § | |

### PLAINTIFF' S ORIGINAL COMPLAINT

Comes now Plaintiff, American Southern Insurance Company ("Plaintiff" or "American Southern") complaining of Assurance Resources, Inc. ("ARI"), Companion Life Insurance Company ("Companion"), RGA Reinsurance Company ("RGA"), Russell T. Coats, Sr. ("Coats"), Patrick L. Lalor ("Lalor") and Patrick L. Lalor, Attorney at Law LLC ("Lalor Law")(collectively referred herein as "Defendants"), and for causes of action would respectfully show unto the Court as follows:

## I. PARTIES

1.     Plaintiff American Southern Insurance Company is a Kansas corporation with its principal place of business located in the state of Georgia. Therefore, American Southern may be considered either a citizen of Kansas or Georgia for purposes of diversity jurisdiction.

2.     Defendant Assurance Resources, Inc. is a corporation with its principal place of business located in the state of Texas. Therefore, ARI may be considered a citizen of Texas for purposes of diversity jurisdiction. ARI may be served with summons by and through its registered agent for service of process, Russell T. Coats Sr., 4010 Blue Bonnet, Suite 117, Houston, TX 77025.

3.     Defendant Companion Life Insurance Company is an insurance company with its principal place of business located in the state of South Carolina and incorporated under the laws of South Carolina. Therefore, Companion may be considered a citizen of South Carolina for purposes of diversity jurisdiction. Companion may be served with summons by and through its registered agent for service of process, CT Corp. System, 1201 Peachtree Street, NE, Fulton, Atlanta GA 30361.

4.     Defendant RGA Reinsurance Company is a corporation with its principal place of business located in the state of Missouri and incorporated under

the laws of Missouri. Therefore, RGA may be considered a citizen of Missouri for purposes of diversity jurisdiction. RGA may be served with summons by and through its registered agent for service of process, CT Corp. System, 1201 Peachtree Street, NE, Fulton, Atlanta GA 30361.

5.   Defendant Russell T. Coats, Sr. is an individual who, upon information and belief, resides in the state of Texas in or around his place of employment, Assurance Resources, Inc., in Houston, Texas. Therefore, Russell T. Coats, Sr. may be considered a citizen of Texas for purposes of diversity jurisdiction.

6.   Defendant Patrick L. Lalor is an individual who resides in the state of Colorado at 13550 Northgate Estates Dr., Colorado Springs, CO 80921. Therefore, Patrick L. Lalor may be considered a citizen of Colorado for purposes of diversity jurisdiction.

7.   Defendant Patrick L. Lalor, Attorney at Law LLC is a limited liability company registered in the state of Colorado. Additionally, for purposes of jurisdiction, a limited liability company holds the citizenship of its members. Upon information and belief, Patrick Lalor is the sole managing member of Patrick L. Lalor, Attorney at Law LLC, and resides in the state of Colorado at 13550 Northgate Estates Dr., Colorado Springs, CO 80921. Therefore, Patrick L. Lalor,

Attorney at Law LLC may be considered a citizen of Colorado for purposes of diversity jurisdiction.

## II. JURISDICTION AND VENUE

8.    The Court has jurisdiction of this lawsuit pursuant to 28 U.S.C. §1332 §1332(a)(1) because the Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

9.    Plaintiff asserts that a substantial part of the facts in this case arose in the state of Texas, damages sustained by Plaintiff occurred as a result of Defendants actions in Texas, and thus Texas substantive law should apply in this case.

10.   Venue is proper in this District Court because Plaintiff's principal place business is located in this District and, under 28 U.S.C. §1391(a)(2) / §1391(b)(2), a substantial part of the events or omissions giving rise to the claims set forth below occurred in this District.   In addition, venue is proper in this District Court due to specific actions of the parties that there were conducted in Georgia, including but not limited to: (1) ARI was present in Georgia for meetings regarding the Agency Agreement; (2) ARI was present in Georgia for communications regarding the terms included in the Agency Agreement; and, (3) American Southern executed the Agency Agreement in Georgia, and the Agency

Agreement specified that American Southern was "of Atlanta, Georgia."

## III. FACTS

11.     In 2010, American Southern entered into a General Agency
Agreement, as well as a Limited Agency Agreement that was incorporated as part
of the General Agency Agreement (collectively the "Agency Agreement" or
"Contract") with ARI. The Agency Agreement provided, among other things, that
ARI was authorized as Plaintiff's agent to issue insurance policies, collect
premiums, accept or reject risks and "manage, process and settle claims (under the
supervision of the Company)." *See Exhibit A* (a true and correct photocopy of the
General and Limited Agency Agreements), p. 1. Per the Agency Agreement,
American Southern had full authority and final say concerning the resolution of all
claims. Additionally, the Agency Agreement stated that ARI, as the general agent
of American Southern, would be responsible for the collection of premiums and
that said funds would be held by ARI "in a fiduciary capacity, as trustee for
[American Southern]." *See Exhibit A*, p. 4.

12.     Furthermore, the Contract between American Southern and ARI
stated that ARI was responsible to report "all losses to an adjuster approved by
[American Southern], or to the Home Office of [American Southern], within forty-
eight (48) hours after receipt by [ARI] of notice of the loss." *See Exhibit A*, p. 5.

Additionally, the Agency Agreement stated that American Southern had a right to terminate the Contract in the event ARI: (1) failed to service the policies or to maintain the quality of services and obligations necessary to operate within the Agreement; (2) failed to render timely and proper reports or premium accounting as required…; or, (3)   engaged in acts or omissions constituting abandonment, fraud, insolvency, misappropriation of funds, material misrepresentation, or gross and willful misconduct…(emphasis added). *See Exhibit A*, p. 7.

13.    The Agency Agreement also provided that American Southern would "exercise final control in the settlement and payment of all losses and loss adjustment expenses, and exercise all powers usually exercised by a company…." *See Exhibit A*.

14.    At all times relevant herein, Russell T. Coats, Sr. was the Chairman/Chief Executive Officer of ARI, and Patrick Lalor was Staff Counsel for ARI, both of whom were bound under the terms of the Agency Agreement.

15.    In accordance with the terms in the Agency Agreement, ARI was responsible for handling the management and processing of claims, including certain claims brought by Itzel Camacho, individually and as independent administrator of Jesus Hernandez (deceased), and as next friend of Matthew Hernandez (a minor child) (collectively the "Hernandez Claimants").   The

Hernandez Claimants brought their claims following a motor vehicle accident occurring on or about October 12, 2013. The Hernandez Claimants brought suit against Jesus Hernandez's employer, JNP Enterprises, LLC ("JNP"), alleging that the vehicle JNP provided to Hernandez during the course and scope of his employment was not safe and ultimately caused the vehicle to roll over, resulting in Hernandez's death ("Hernandez lawsuit"). *See Exhibit B, Camacho, individually, and as independent admin. of Jesus Hernandez (deceased), and as next friend of Matthew Hernandez (minor) v. JNP Transport LLC, et al,* Cause No. 2014- 57833, 127th Judicial District Court of Harris County, Texas.

16.    Subsequent to the filing of the Hernandez lawsuit, JNP tendered the claims to ARI. ARI administered these claims under two separate insurance policies that provided coverage to JNP, one issued by American Southern and the other by co-defendant Companion. The Companion policy included an accidental death and dismemberment benefit that the American Southern policy did not include. As set forth above, ARI was operating as the agent of American Southern in administering the claims pursuant to the aforementioned Agency Agreement, and thus was responsible for acting in a fiduciary capacity and in the best interest of American Southern.

17.    During the initial handling of the Hernandez claim, ARI claims

managers informed JNP that it was a covered entity in the event of a lawsuit, and

that defense would be provided by American Southern.  Despite its duties under

the Agency Agreement, ARI did not inform American Southern of the claims by

JNP or of the existence of the Hernandez lawsuit.  ARI later informed JNP that

since it had allegedly threatened to file suit against ARI in a separate unrelated

matter, there was a potential conflict of interest.  ARI explained further that, unless

JNP certified in writing that it would not file a direct action against ARI in the

separate unrelated matter, ARI (and thus American Southern) could not provide

JNP a defense under the American Southern policy and would not process the

claim.

18.     As a consequence of ARI's decision not to defend JNP unless it

provided written assurance not to sue ARI concerning the separate, unrelated

claim, JNP retained counsel and filed suit against both ARI and American

Southern (hereinafter the "JNP lawsuit").  In the JNP lawsuit, JNP asserted claims

against American Southern arising out of the bad faith actions of ARI for breach of

contract, violations of the Texas Insurance Code and for violations of the Texas

Deceptive Trade Practices Act.  *See Exhibit C*, *JNP Enterprises, LLC v. Assurance

Resources, Inc. and American Southern Insurance Co.,* Cause No. 2014-71223;

151st Judicial District Court of Harris County, Texas, filed on December 8, 2014.

On January 28, 2015, ARI placed American Southern on notice for the first time of these claims and the pending Hernandez lawsuit, well over a year after ARI first acknowledged the claim of the Hernandez claimants.  ARI accepted service of the Hernandez lawsuit on behalf of American Southern, but failed to inform American Southern of the suit until after American Southern was in default.

19.     American Southern, ARI and JNP agreed to settle the claims asserted in the JNP lawsuit, and entered into a confidential settlement agreement in exchange for dismissal of all claims.  Included in the settlement agreement were terms regarding the handling of the Hernandez lawsuit going forward.   In accordance with the confidential terms therein, JNP retained its own counsel and proceeded with its defense in the Hernandez lawsuit.

20.     Following the resolution of the JNP lawsuit, the parties in the Hernandez lawsuit agreed to attend mediation in an attempt to settle the claims at issue in the Hernandez lawsuit.  Both JNP and ARI had advance notice of the mediation (which was scheduled for June 24, 2015); however, ARI failed to properly inform American Southern of the mediation or to secure settlement authority from American Southern prior to mediation.  In fact, on the day of mediation, counsel for ARI sent American Southern an email stating that he was "literally sitting at mediation at this point" and that he needed immediate authority

to settle the claims at issue in the Hernandez lawsuit. Given the failure of ARI to properly notify American Southern of the mediation, as required under the terms of the Agency Agreement, American Southern had little option but to inform ARI that it was not possible to approve the immediate authority requested since it was not provided the appropriate pre-mediation reports.

21.     After mediation, the Hernandez claimants and JNP reached an agreement on an amount to settle the Hernandez lawsuit. ARI and American Southern then engaged in additional correspondence via U.S. Mail, email correspondence and telephone conversations concerning the appropriate amount needed from American Southern to fund the settlement of the Hernandez lawsuit, as well as the amount that ARI would request Companion to contribute towards the settlement under its policy insuring JNP. As stated above, included in the Companion policy was accidental death and dismemberment coverage and, on June 27, 2015, ARI represented to American Southern that it had requested that Companion contribute towards the settlement of the Hernandez lawsuit and that Companion would contribute towards the settlement of the Hernandez lawsuit. Two days later, on the morning of June 29, 2015, ARI reiterated to American Southern that it had requested that Companion contribute towards the settlement in an amount greater than half of the total amount that had been agreed upon to settle

the Hernandez lawsuit.

22.    Despite making these representations early in the day on June 29, 2015, and contrary to prior notification (from ARI to American Southern) that Companion would contribute to greater than half of the agreed upon settlement amount, ARI changed course just a few hours later and stated that it believed that the claim at issue in the Hernandez lawsuit was solely covered by the American Southern policy.  More importantly, ARI informed American Southern that it (American Southern) was solely responsible for payment of the full settlement amount to the Hernandez claimants pursuant to the settlement that had been reached between the Hernandez claimants and JNP, which was accepted by the court.

23.    Subsequent to this change in its initial evaluation and opinion representatives for ARI, including Coats and Lalor, reasoned to American Southern (for the first time) that there was an applicable exclusion that applied in the Companion policy, and thus coverage was not available for the accidental death and dismemberment benefit.  Notwithstanding, ARI has never provided American Southern with any analysis of the alleged exclusion under the Companion policy and has not provided American Southern with a report, document or testimony in support of the alleged exclusion.  Instead, ARI merely concluded, without support,

that American Southern was responsible for payment of the entirety of the settlement, and that the accidental death and dismemberment benefit under the Companion policy was not available.

24.    Given ARI's handling of the claims set forth herein, it is in breach of the Agency Agreement as well as its fiduciary duty to act solely in the best interests of American Southern.    Furthermore, upon information and belief, Defendant Coats is the alter ego of Defendant ARI.  Plaintiff alleges – and intends to prove – that ARI was used as a vehicle to perpetrate fraud upon the Plaintiff, that this entity was organized and operated as a mere tool or business conduit of Coats, that this entity was organized to evade existing and/or future legal obligations, that this entity was used by Coats for the purpose of perpetrating an actual fraud upon the Plaintiff, and that ARI perpetrated an actual fraud upon the Plaintiff primarily for Coats's direct, personal benefit.  The Plaintiff also alleges – and intends to prove – that there was and/or is such a unity between ARI and Coats, and that ARI and Coats cannot be legally separated.    Coats was the Chairman/CEO of ARI during the time period discussed above.  Coats had the authority to employ, direct, and discharge employees or representatives of ARI during the time periods at issue.  Coats engaged in the performance of certain non-delegable or absolute duties for and on behalf of ARI during the time periods at

issue. ARI delegated the management of all or part of its business to Coats during the time periods at issue. Coats controlled the actions and conduct of ARI during the time periods at issue. Accordingly, Coats can and should be held individually liable for the wrongful acts and conduct of ARI. Additionally, Coats personally committed certain intentional wrongful acts and conduct that subject him to personal liability in this case.

25.     Similarly, as discussed herein, Lalor committed certain intentional wrongful acts and conduct that subject him to personal liability in this case. In addition, Patrick L. Lalor, Attorney at Law LLC, a limited liability company owned by Lalor, is also liable for the intentional wrongful acts and conduct of Lalor as set forth herein.

26.     Furthermore, Defendant RGA, as a re-insurer of Companion and via contractual agreement with Companion, was responsible for the risk associated with, and the handling of, the Companion policy insuring JNP at issue in the Hernandez lawsuit. As a reinsurer, RGA accepted premiums from Companion and agreed to accept the transfer of all risks under the Companion policy. RGA participated in and benefited from the handling of claims by ARI, which proximately caused American Southern economic damages and for which it now sues.

## IV. CAUSES OF ACTION

### A.     *Breach of Contract (against ARI and Coats)*

27.     Plaintiff incorporates by reference all of the allegations set forth above, as if the same were fully set forth at length herein.

28.     Plaintiff entered into a valid Agency Agreement with ARI.

29.     Prior to Defendants' breach, Plaintiff properly performed its obligations under the terms of the Agency Agreement, thus fulfilling all conditions precedent.

30.     Defendants materially breached their obligations under the Agency Agreement with Plaintiff, excusing Plaintiff from further performance. Additionally, Defendants violated the duty of good faith in their actions towards Plaintiff.

31.     Under Texas law, the necessary elements for a breach of contract claim are: (1) there is a valid and enforceable contract; (2) Plaintiff is a proper party to sue for breach of contract; (3) Plaintiff performed, tendered performance of, or was excused from performing its contractual obligations; (4) Defendants breached the contract; and (5) Defendants' breach caused the Plaintiff injury.

32.     A valid, enforceable contract (the Agency Agreement) clearly existed between the parties, and this contract was ratified by Defendants' actions.

33.     Defendants failed to perform as obligated under the terms of the Contract at issue, and thus breached their contractual obligations.

34.     Additionally, Defendants owed Plaintiff a duty of good faith relative to performance and enforcement. *Tex. Bus. & Com. Cod*e §1.304. Defendants breached their duty of good faith, thus breaching the Contract that forms the basis of this lawsuit, by the following particulars, including but limited to: (1) failure to timely report claims; (2) failure to timely report relative to risk analysis of the Hernandez claims; (3) failure to provide complete exposure values to Plaintiff; (4) failure to timely request authority for indemnification; (5) failure to adequately notice and define claims to Plaintiff; (6) allowing claims to default without prior notice; and, (7) inaction resulting in a bad faith suit by the insured against Plaintiff.

35.     As set forth above, these breaches were the proximate cause of Plaintiff's economic damages, for which Plaintiff now sues.

**B.**     ***Breach of Fiduciary Duty (against ARI, Coats, Lalor, and Lalor Law)***

36.     Plaintiff incorporates all of the allegations set forth in all of the preceding paragraphs as if the same were fully set forth in this Count.

37.     Defendants, including but not limited to Coats and Lalor, by their actions and through ARI contracting to provide services to Plaintiff, breached their fiduciary duty to Plaintiff by fraudulently making inaccurate representations to

Plaintiff relative to the JNP and Hernandez lawsuits, as well as in failing to properly analyze coverage under the Companion policy, to the detriment of Plaintiff.

38.     Under the totality of the facts pled herein, Defendants' actions were willful, wanton, intentional and with callous and reckless disregard for the rights of Plaintiff.    Under Texas law, Defendants breached their fiduciary duty, thus breaching the Contract that forms the basis of this lawsuit, by the following particulars, including but limited to: (1) failure to timely report claims; (2) failure to timely report relative to risk analysis of the Hernandez claims; (3) failure to provide complete exposure values to Plaintiff; (4) failure to timely request authority for indemnification; (5) failure to adequately notice and define claims to Plaintiff; (6) allowing claims to default without prior notice; and, (7) inaction resulting in a bad faith suit by the insured against Plaintiff.

39.     Defendants have thus breached their fiduciary duty, which proximately caused Plaintiff's economic injuries in this case, for which it now sues.

### C.     *Negligence (against ARI, Coats, Lalor, and Lalor Law)*

40.     Plaintiff incorporates all of the allegations set forth in all of the preceding paragraphs as if the same were fully set forth in this Count.

41.     Defendants owed certain duties to the Plaintiff under the Agency Agreement to, among other things, maintain, account, and service the claims in a reasonable and prudent manner. Defendants negligently administered the claims at issue in this case, and as such breached their duty to fulfill their obligations of maintenance, accounting, and servicing of the claims.

42.     Under Texas law, a tort action is permissible if the duty owed arises independently from the contract. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

43.     In other words, Defendants undertook the performance of administering claims under American Southern's insurance policies and, by negligently performing that contract, they are liable in tort. *Id.* Specifically, Defendants negligently communicated information about the status of the Hernandez claims to Plaintiff, as well as promised contribution from Companion to settle the Hernandez lawsuit.

44.     As a result, Plaintiff seeks all damages suffered as a result of Defendants' negligence.

### D.     *Promissory Estoppel (against all Defendants)*

45.     Plaintiff incorporates all of the allegations set forth in all preceding paragraphs as if they were fully set forth in this Count.

46.     In addition and/or in the alternative to the above, Texas law recognizes a claim for promissory estoppel when (1) a promise had been made, (2) it is foreseeable that the person to whom the promise was made will rely on this promise, and (3) the promisee has relied on this promise to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

47.     Here, ARI made a number of material promises to Plaintiff, including but not limited to its promise to act as an agent in the best interest of American Southern, and thus to appropriately advise American Southern as it related to coverage available under the  Companion policy at issue in the Hernandez lawsuit.

48.     Plaintiff's reliance on the promises related to Companion's contribution of settlement funds (under the Companion policy) was both reasonable and foreseeable.   Plaintiff did in fact reasonably and justifiably rely on Defendant's promises, to its financial detriment which was the proximate cause of Plaintiff's injuries.

E.     *Fraud (against ARI, Coats, Lalor, and Lalor Law)*

49.     Plaintiff incorporates all of the allegations set forth in all preceding paragraphs as if they were fully set forth in this Count.

50.     Plaintiff herein asserts a claim of common law fraud, incorporating all facts set forth above.   To recover on a claim of common law fraud, a Plaintiff must

prove that: (1) the Defendant made a material representation or omission; (2) which was false or which had the effect of falsifying statements; (3) which the Defendant either knew to be false at the time or was asserted without knowledge of the truth; (4) which the Defendant intended to be acted upon by the Plaintiff; (5) which the Plaintiff relied upon; and (6) which caused injury to the Plaintiff. *Johnson & Johnson Medical, Inc. v. Sanchez*, 924 S.W.2d 925, 929-30 (Tex. 1996); *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 217, 723 (Tex. 1990); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983).

51. As discussed above, Defendant ARI fraudulently represented to Plaintiff in June, 2015 that it requested that Companion contribute to the settlement in the Hernandez lawsuit under the terms of its policy, and that Companion would in fact contribute to payment of the settlement amount. Later, and without a full analysis of coverage under the Companion policy or any evidence supporting an alleged exclusion under the Companion policy, ARI informed Plaintiff that American Southern was responsible for payment of the entirety of the agreed settlement in the Hernandez lawsuit.

52. Defendants, including but not limited to Coats and Lalor, knowingly made these false representations to Plaintiff and knew them to be false at the time. Defendants made these representations in order to induce Plaintiff into agreeing to

settle the Hernandez lawsuit with the understanding that Companion would be paying a large portion of the settlement amount. Plaintiff reasonably and justifiably relied upon these representations to its detriment, causing economic injury to Plaintiff for which Defendants are now liable.

**F.**   ***Fraud by Nondisclosure (against ARI, Coats, Lalor, and Lalor Law)***

53.   Plaintiff incorporates all of the allegations set forth in all preceding paragraphs as if they were fully set forth in this Count.

54.   Plaintiff alleges fraud by nondisclosure by Defendants since Defendants owed Plaintiff a duty to disclose information, which Defendants did not disclose, and the nondisclosure was misleading, as a positive misrepresentation of facts. Defendants had a duty to disclose all information relative to claims being administered by ARI under the Agency Agreement.

55.   The elements of fraud by nondisclosure are: (1) Defendant concealed from or failed to disclose material facts to Plaintiff; (2) Defendant had a duty to disclose material facts to the Plaintiff; (3) Defendant knew that Plaintiff was ignorant of the facts and Plaintiff did not have an equal opportunity to discover the facts; (4) Defendant was deliberately silent when it had a duty to speak; (5) Defendant intended to induce Plaintiff to take some action or refrain from acting; (6) Plaintiff relied on Defendant's nondisclosure; and, (7) Plaintiff was injured as a

result of acting without knowledge of the undisclosed facts. *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001); *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

56.     Defendants, including but not limited to Coats and Lalor, are liable to Plaintiff for fraudulent nondisclosure due to their failure to properly disclose material facts during the administration and handling of the Hernandez and JNP lawsuits.

57.     Defendants' multiple nondisclosures were known by Defendants, and were done so with the purpose of inducing Plaintiff and upon which Plaintiff relied. Defendants failed to timely report the Hernandez claims to Plaintiff, failed to timely report a risk analysis of the Hernandez claims to Plaintiff, failed to report complete exposure values to Plaintiff and failed to notify Plaintiff regarding settlement demands or upcoming scheduled mediation in the Hernandez lawsuit.

58.     Plaintiff has been injured by Defendants' nondisclosure and seeks damages as a result of Defendants' fraudulent actions.

**G.     *Negligent Misrepresentation (against all Defendants)***

59.     Plaintiff incorporates all of the allegations set forth in all preceding paragraphs as if they were fully set forth in this Count.

60.     As an alternative to fraud, Defendants' actions constitute negligent

misrepresentation. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 419 (Tex. 2011), reh'g denied (Dec. 16, 2011). The elements of a cause of action for negligent misrepresentation are: (1) Defendant made a representation to the Plaintiff in the course of Defendant's business or in a transaction in which the Defendant had an interest; (2) Defendant supplied false information for the guidance of others; (3) Defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) Plaintiff justifiably relied on the representation; and, (5) Defendant's negligent misrepresentation proximately caused the Plaintiff's injury. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

61.     As set forth herein, Plaintiff reasonably and justifiably relied on information supplied by ARI relative to its initial belief that coverage was provided under the Companion policy, and that Companion would be contributing a significant sum of money towards the settlement amount.

62.     Plaintiff's reliance on this false information proximately caused Plaintiff's economic damages.   As such, Defendants are liable for negligent misrepresentation.

63.     In addition to or in alternative to the above, Defendants are also liable to Plaintiff for innocent misrepresentation under a strict liability standard under the

law of torts. Restatement (Second) of Torts §552(1977). The facts demonstrate that Defendants made repeated misrepresentations to Plaintiff.

64.    Regardless of Defendants' intentions, Plaintiff reasonably and justifiably relied on these misrepresentations, to its financial detriment.

65.    The reliance on Defendants' misrepresentations proximately caused Plaintiff's economic damages, for which it now sues.

### H.    *Unjust Enrichment (against all Defendants)*

66.    Plaintiff incorporates all of the allegations set forth in all preceding paragraphs as if they were fully set forth in this Count, except the allegations set forth in its promissory estoppel and breach of contract claims.

67.    Restitution ought to be awarded when retention of the property of another would cause the retaining party to be unjustly enriched.  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 43 (Tex. 1992).

68.    To the extent Defendants have benefited by way of the compensation paid to them by Plaintiff under the terms of the Agency Agreement with Plaintiff and/or services performed thereunder to Plaintiff's detriment, Defendants were unjustly enriched, and the Plaintiff is entitled to restitution for same.

### I.    *Civil Conspiracy (against all Defendants)*

69.    Plaintiff incorporates all of the allegations set forth in all preceding

paragraphs as if they were fully set forth in this Count.

70.     Plaintiff pleads a claim for civil conspiracy.     The elements of conspiracy are: (1) the Defendant was a member of a combination of two or more persons; (2) the object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object of course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) the Plaintiff suffered an injury as a proximate result of the wrongful act. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 881 (Tex. 2010).   Conspiracy is simply a way to extend liability beyond the primary actor to others who agreed to act toward a common goal. *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925-26 (Tex. 1979).   The general rule is that each person in the conspiracy is responsible for the acts of the others that were done in furtherance of the common purpose. *Carroll*, 592 S.W.2d at 926.

71.     Courts have also held that fraud and breach of fiduciary duty can serve as the basis of a conspiracy claim. *See Ernst & Young*, *LLP v. Pacific Mut. Life Ins.*, 51 S.W.3d 573, 583 (Tex. 2001); *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 450 (Tex.App.—Eastland 2006, pet. denied).   As pled herein, Defendants have engaged in fraud and breached their fiduciary duty under the

terms of the Agency Agreement.

72.    In this case, Plaintiff seeks damages suffered as a result of a conspiracy amongst the Defendants.  Defendants have engaged in the common purpose of being enriched through both receiving income and avoiding payment of claims under the Companion policy, and as a result of their conspiracy Plaintiff suffered injury.

## V. DAMAGES

73.    As a proximate result of the above, Plaintiff has incurred, or will incur the following actual damages, for which it now seeks recovery:

74.    All of its actual damages, including, without limitation, all incidental and consequential damages, in an amount in excess of $200,000 but not more than $1,000,000;

75.    All reasonable and necessary attorneys' fees and costs incurred in this action and resulting writs or appeals;

76.    Exemplary damages from Defendants due to Defendants' intentional and fraudulent activity, as provided in Texas Civil Practice & Remedies Code sections 41.001(7), 41.003(a), and as otherwise described herein and allowed by law;

77.    Punitive and/or treble damages due to Defendants' fraud.

78. Prejudgment and post judgment interest at the highest rates permitted by law and all taxable court costs.

## VI. DISCOVERY

79. Plaintiff suggests it will need 12 months to conduct written discovery, ordering of records, fact witness oral discovery, party witness oral discovery, and specifically including the need for the depositions of a corporate representative for each Defendant-entity in this case. Plaintiff anticipates the need for oral depositions of, including but limited to, Patrick Lalor, Rusty Coates, Carolyn Duane, Susan Wilson, David Desirie, Phil Sharp, Gerry Howard, Brian Lopez and Austin Scott.

## VII. DEMAND FOR JURY

80. Plaintiff demands a trial by jury.

## VIII. REQUEST FOR AN ACCOUNTING

81. Plaintiff requests an Order from this Court for a statement of account from ARI relative to all claims administered by Defendants, and pursuant to the terms set forth in the Agency Agreement attached hereto.

## IX. PRAYER

**WHEREFORE**, Plaintiff requests that Defendants be cited and appear and answer, and that on final hearing thereof, Plaintiff have:

82. Actual Damages;

83.     Exemplary Damages;

84.     Punitive Damages;

85.     Treble Damages;

86.     Prejudgment and Post-judgment Interest;

87.     Accounting;

88.     Court Costs;

89.     Attorneys' Fees; and

90.     Such other and further relief in equity and at law to which Plaintiff may be justly entitled.

Respectfully submitted,

s/ John T. Sparks, Sr.
Georgia State Bar No. 669575
**Austin & Sparks, P.C.**
2974 Lookout Place N.E., Suite 200
Atlanta, Georgia 30305
Phone: (404) 869-0100
Fax: (404) 869-0200
jsparks@austinsparks.com

**LOCAL COUNSEL FOR PLAINTIFF**

and

**CLINTON V. COX**
Texas State Bar No. 24040738
*Motion for Admission Pro Hac Vice to be filed*

Page 27

**HOWARD J. KLATSKY**
Texas State Bar No. 00786024
*Motion for Admission Pro Hac Vice to be filed*
**FRANK J. CATALANO**
Texas State Bar No. 24052991
*Motion for Admission Pro Hac Vice to be filed*
**Fee, Smith, Sharp & Vitullo, L.L.P.**
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, TX  75240
(972) 934-9100
(972) 934-9200 (Fax)
ccox@feesmith.com
hklatsky@feesmith.com
fcatalano@feesmith.com
**CO-COUNSEL FOR PLAINTIFF**